| | | |
|---|---|---|
| TIMOTHY T. BOYLAN, J.R., Personally, and as the Administrator of the ESTATE OF LISA LYNN EDWARDS, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | No. 3:24-CV-39-CEA-DCP |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON D. WARDLAW, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

This case is before the Court on the matter of a discovery dispute between the parties, specifically whether certain witness interview notes are protected work-product. For the reasons explained below, the Court finds that they are not protected work-product and **ORDERS** Defendants to provide the withheld interview notes to Plaintiff.

## I.     BACKGROUND

Plaintiff is the son of Lisa Lynn Edwards (hereinafter, "Decedent") [Doc. 110 p. 2]. Decedent suffered respiratory and cardiac arrest while in police custody after being arrested for trespass at Fort Sanders Regional [*Id.* at 8, 19–20].

This case was initiated on February 1, 2024 [Doc. 1]. On October 17, 2025, Plaintiff sent a letter to Defendants explaining there was a discovery dispute related to Defendants' responses and objections to Interrogatories, Requests for the Production of Documents, and Requests for Admissions, and responding to Defendants' intent to file a motion to quash the subpoenas Plaintiff

had served [Doc. 93-1]. On November 5, 2025, Defendants withdrew their objections to the subpoenas, and on November 21, 2025, sent a letter providing their position regarding the discovery dispute, as well as supplemental responses [Doc. 93-2].

On December 30, 2025, Plaintiff moved for an order compelling Defendants to produce a privilege log compliant with Federal Rule of Civil Procedure 26(b)(5), submit documents withheld on the basis of privilege for *in camera* inspection, and produce materials improperly withheld under the Tennessee Patient Safety and Quality Improvement Act ("TPSQIA"), codified at Tenn. Code Ann. § 68-11-272, as well as under the attorney-client and work product privileges [Doc. 93 pp. 17–22]. Defendants responded in opposition and argued that some of the withheld materials were also protected by the "work-product doctrine, and the anticipation of litigation privilege," because "[t]he hospital's legal team . . . assisted in directing the investigation from its inception" [Doc. 97 p. 21].

The Court found that the TPSQIA privilege was not applicable to this case and ordered "any materials that are being withheld solely pursuant to Tenn. Code Ann. § 68-11-272(c)" to be disclosed [Doc. 130 p. 14]. Upon review of Defendants' privilege log and the remaining claims of attorney-client privilege and work product privilege [Doc. 93-5], the Court found "additional supplementation [was] warranted because it [did] not contain sufficient detail" [Doc. 130 p. 19]. The Court ordered Defendants to supplement the privilege log consistent with Rule 26(b)(5)(A), as well as for the parties to confer and file a joint status report detailing any remaining disputes related to the privilege log on or before June 24, 2026 [Doc. 130. p. 19].

## II.    POSITIONS OF THE PARTIES

On June 24, 2026, the parties filed a Status Report Detailing Discovery Dispute ("Status Report") [Doc. 134].

Plaintiff "disputes Defendants' withholding of the remaining witness interview notes" [*Id.* at 2]. Plaintiff cites to the original contested privilege log which asserted claims of privilege over the witness interview notes, namely Tenn. Code Ann. § 68-11-272 and "[s]tatements taken in anticipation of litigation; and Attorney Work Product" [Doc. 93-5 p. 1]. Plaintiff highlights that "[a]lthough Defendants also included work product language in the same entry, the log described counsel's involvement as occurring 'for investigation purposes in tandem with the QIC's purposes of investigation into the Lisa Edwards matter'" [Doc. 134 p. 2 (quoting Doc. 93-5)]. "Defendants now characterize the QIC investigation as 'parallel,'" but Plaintiff contends "that is not what the privilege log says" [*Id.*]. Plaintiff submits that "[a] tandem investigation is not two independent tracks" and moreover, "[t]hat distinction matters because Defendants bear the burden of showing that each withheld note was prepared because of litigation, not because of the same QIC/Risk Management investigation that the Court has already held is not privileged" [*Id.* at 2–3]. Plaintiff argues, "Defendants should not be permitted to recast the same QIC/Risk Management witness interview materials as categorical work product merely because counsel also participated in the same tandem investigation" [*Id.* at 3].

Plaintiff further asserts that the Supplemental Privilege Log "does not cure the problem," as it still "groups numerous witness interview notes into one categorical entry," as well as "lists 'Numerous' dates and 'Numerous' pages" [*Id.*]. Plaintiff maintains that the "[t]he threshold question is whether the remaining witness notes are protected work product at all" and that he is "not required to show substantial need or undue hardship unless Defendants first establish that the notes were prepared in anticipation of litigation rather than as part of the QIC/Risk Management investigation" [*Id.*]. Plaintiff contends that "Defendants' reliance on Plaintiff's ability to depose the witnesses is also misplaced," as "[t]he hospital video does not contain audio" and posits that

"if the interview notes had been disclosed when they should have been disclosed, Plaintiff may well have made different deposition decisions, including whether to depose some or all of the witnesses identified on the supplemental log" [*Id.* at 4].

Plaintiff asks that the Court "order the production of the remaining witness interview notes" or alternatively, "conduct an *in camera* review of all remaining withheld witness interview notes to determine whether any portion contains protected work product" [*Id.*]. If the witness interview notes do contain protected work product, Plaintiff requests that the Court "order Defendants to redact that limited information and produce the non-privileged factual witness interview content" [*Id.*].

Defendants argue that "the privileged documents being withheld are the notes of interviews that were performed at the direction of hospital counsel and in anticipation of litigation" [*Id.*]. Defendants contend that "[t]hese interviews were either in the presence of legal counsel or at the direction of legal counsel (who specifically identified the individuals that he wanted interviewed and specifically delineated the questions and topics to be addressed in the interviews), and the notes prepared from those interviews are based upon counsel's mind, knowledge, and thought processes" [*Id.* at 4–5 (citing Doc. 97-3 ¶¶ 6–8)]. "While Risk Management concurrently performed functions that do fall under the State QIC privilege," Defendants advance that "the lack of the applicability of the State law privilege, per this Court's ruling, does not obliterate the attorney-work product and anticipation of litigation privileges that are sacrosanct" [*Id.* at 5].

Further, Defendants explain that they "are not withholding all interview notes on the basis that legal counsel conducted and directed interviews in anticipation of litigation" [*Id.*]. Rather, Defendants have already produced interview notes "from interviews that were conducted outside the presence of legal counsel and conducted solely for QIC purposes" [*Id.*]. Defendants raise that

4

"Plaintiff has not provided any authority that the undertaking of a parallel QIC investigation automatically strips involved counsel of work product and anticipation of litigation protections" [*Id.*]. Defendants note that "[t]he only notes of interviews currently withheld are those of hospital employees that assisted or provided care to Ms. Edwards during her hospital visit" [*Id.*].

Defendants detail that "[h]ospital's counsel became involved and began his investigation on February 6, 2023, because of the immediate, objectively reasonable prospect of litigation that this case presented" and that "[t]he risk managers were, in this case, working at hospital's counsel's direction" [*Id.* at 6]. Defendants argue that under Rule 26.02(3) of the Tennessee Rules of Civil Procedure, "the work prepared by an attorney's agent is likewise sheltered from discovery" [*Id.*]. Defendants advance that "[t]he substantial equivalent of the privileged materials was and is available to Plaintiff's counsel," but that they "elected not to depose Ms. Edwards' treating hospital providers" [*Id.*].

Finally, Defendants maintain that "[t]his Court did not order Defendants to supplement their privilege log to the level of granularity Plaintiff seeks" and that the Supplemental "Log complies with the Court's Order and the express terms set forth therein" [*Id.* at 7–8].

## III. ANALYSIS

At issue before this Court is Defendants' claim of work-product doctrine in their Supplemental Log and whether the Supplemental Log itself is sufficient.

As a preliminary matter, the Court must again address the issue of whether state privilege or federal law privilege applies, as Defendants cite to Tenn. R. Civ. P. 26.02(3) [Doc. 134 p. 6]. Plaintiff's Complaint asserts federal question jurisdiction. "Questions of privilege are to be determined by federal common law in federal question cases." *Reed v. Baxer*, 134 F.3d 351, 355 (6th Cir. 1998) (citing Fed. R. Evid. 501).

Plaintiff brings four state claims under the Court's supplemental jurisdiction. In cases presenting a federal question, "federal privilege law applies to all claims," including claims brought under the court's supplemental jurisdiction, "in order to avoid conflicting application in the same case." *UAW v. Honeywell Int'l, Inc.*, 300 F.R.D. 323, 327 (E.D. Mich. 2014); *see also Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir. 1992) ("[I]n federal question cases where pendent state claims are raised the federal common law of privileges should govern all claims of privilege raised in the litigation."). Accordingly, the Tennessee Rules of Civil Procedure do not apply to this matter.

### A.    Sufficiency of the Privilege Log

The Court noted in its previous Order, that while Rule 26 of the Federal Rules of Civil Procedure does not delineate the precise information required in a privilege log, the requirements have been described as "date, author and all recipients of the document, subject matter, and an explanation as to why the document should be privileged and not produced in discovery." [Doc. 130 p. 18 (citing *Clark Const. Grp., Inc. v. City of Memphis*, No. 01-2780, 2005 WL 6187896, at *3 (W.D. Tenn. Feb. 9, 2005) (quoting *Coltec Indus., Inc. v. Am. Motorists Ins. Co.*, 197 F.R.D. 368, 371 (N.D. Ill. 2000))]. And here, the Court ordered Defendants to supplement the privilege log consistent with Rule 26(b)(5)(A), which requires that the party "expressly make the claim [of privilege]" and "identify the nature of the documents, communications, or tangible things not produced or disclosed" [Doc. 130 p. 18 ].

The Supplemental Log identifies the subject matter: "[t]he notes of interviews of individuals, as requested by Hospital Counsel, who interacted with [Decedent] during her time at the hospital . . . were generated by or for Senior Risk Manager Beth Gaby-Smith during and after interviews taken by Senior Risk Managers Beth Gaby-Smith and Martina Holland" [Doc. 134-1].

For recipients, the Supplemental Log provides that "[t]hese notes of interviews were shared among the Risk Management team and the hospital's legal counsel and are kept within the Hospital's Risk Management file" [*Id.*]. It now also details the witnesses interviewed and the dates of interview. Finally, for the basis of the privilege, Defendants explain that "[c]ounsel for the hospital was involved in the planning, identification, execution, and supplemental direction of interviews . . . for investigation purposes in tandem with the QIC's purposes of investigation" [*Id.*]. Defendants represent that "[c]ounsel was present for a number of these interviews, and counsel collaborated with the Risk Managers in preparation of their interview questions . . . because this matter presented an immediate risk of litigation" [*Id.*]. "As a result," Defendants contend, "the content of these interview notes reflect counsel's mental impressions, strategy, and evaluation of potential liability" [*Id.* at 1–2].

Plaintiff argues that the "supplemental log [does not] identify which notes were allegedly created solely as part of a counsel directed litigation investigation, as opposed to the QIC/Risk Management investigation that Defendants previously identified as the purpose for which the notes were created" [Doc. 134 p. 3]. Yet, as reflected in Defendants' original Privilege Log, the witness notes were contended to be privileged under both Tenn. Code Ann. § 68-11-272 and "[s]tatements taken in anticipation of litigation; and Attorney Work Product" [Doc. 93-5 p. 2]. And as Defendants explain, they have already produced the "interview notes . . . from interviews that were conducted outside the presence of legal counsel and conducted solely for QIC purposes" [Doc. 134 p. 5]. They are now only "asserting the present and applicable protections that apply to interviews conducted at counsel's request and/or in the presence of legal counsel" [*Id.*]. The Court finds Defendants' Supplemental Log to be sufficient.

7

### B. Work Product Doctrine

Defendants contend that the remaining interview notes are protected by the work-product doctrine [Doc. 134 p. 4]. Plaintiff responds that "Defendants should not be permitted to recast the same QIC/Risk Management witness interview materials as categorical work product merely because counsel also participated in the same tandem investigation" [*Id.* at 3].

The work-product doctrine is codified in Rule 26(b)(3) which states:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i)  they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii)  the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii). "If the court orders discovery of those materials, it must protect against disclosure of the metal impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).

The party asserting the work-product doctrine "must show that the documents at issue were prepared in anticipation of litigation." *S. Fifth Towers, LLC v. Aspen Ins. UK, LTD*, No. 3:15-CV-151, 2016 WL 11200223, at *6 (W.D. Ky. Aug. 11, 2016) (citation omitted)), *objections overruled*, No. 3:15-CV-00151, 2016 WL 6594082 (W.D. Ky. Nov. 4, 2016). The United States Court of Appeals for the Sixth Circuit has "adopt[ed] the 'because of' test for determining whether documents were prepared 'in anticipation of litigation.'" *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006). This means the party asserting the work-product doctrine must show that "a document was 'prepared or obtained *because of* the prospect of litigation.'" *Id.* (collecting cases)).

8

This test contains "a subjective and objective element to the inquiry[,]" which means "a party must 'have had a subjective belief that litigation was a real possibility, and that belief must have been objectively reasonable.'" *Id.* at 594 (quoting *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998)).

Defendants contend that the withheld materials are "notes of interviews that were performed at the direction of hospital counsel and in anticipation of litigation" [Doc. 134 p. 4]. Defendants represent that "[t]hese interviews were either in the presence of legal counsel or at the direction of legal counsel" [*Id.*]. "While Risk Management concurrently performed functions that do fall under the State QIC privilege," Defendants maintain that "the lack of applicability of the State law privilege . . . does not obliterate the attorney-work product and anticipation of litigation privileges" [*Id.* at 5]. "The only notes of interviews currently withheld are those of hospital employees that assisted or provided care to [Decedent] during her hospital visit" [*Id.*]. Defendants explain that "[h]ospital's counsel became involved and began his investigation on February 6, 2023, because of the immediate objectively reasonable prospect of litigation that this case presented" and that "[t]he risk managers were, in this case, working at hospital counsel's direction" [*Id.*].[1]

"It is clear that documents prepared in the ordinary course of business, . . . or for other nonlitigation purposes, are not covered by the work product privilege." *Roxworthy*, 457 F.3d at 593 (citations omitted). "This holds true even for documents created as part of an investigation." *United States ex rel. Bibby v. Wells Fargo Bank, N.A.*, 165 F. Supp. 3d 1319, 1325 (N.D. Ga. 2015) (citations omitted). Here, Defendants state that hospital counsel began "his

---

[1] Defendants have not requested an *in-camera* inspection [*See* Doc. 134]. Nor do the parties cite any legal authority that would require the Court to conduct an *in-camera* inspection under these particular circumstances.

investigation . . . because of the immediate objectively reasonable prospect of litigation that this case presented" [Doc. 134 p. 5], but the privilege log also reflects that the interview notes were created "in tandem with the QIC's purposes of investigation" [Doc. 134-1 p. 1]. "[While] the documents do not lose their work product privilege 'merely because [they were] created in order to assist with a business decision,'" *Roxworthy*, 457 F.3d at 598–99 (alteration in original) (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)), Defendant must show "that anticipated litigation was the 'driving force behind the preparation of each requested document,'" *In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (6th Cir. 2009) (quoting *Roxworthy*, 457 F.3d at 595; *see also Nat'l Lab. Rels. Bd. v. NPC Int'l, Inc.*, No. 13-0010, 2017 WL 634713, at *8 (W.D. Tenn. Feb. 16, 2017) ("A document is not protected work product if it was prepared solely for an ordinary business purpose, but material prepared in anticipation of litigation that also serves a business purpose is protected if its litigation purpose predominates." (citation omitted)).

Defendants may carry their burden "in any of the traditional ways in which proof is produced in pretrial proceedings such as affidavits made on personal knowledge, depositions, or answers to interrogatories." *Gruenbaum v. Werner Enter., Inc.*, 270 F.R.D. 298, 302 (S.D. Ohio 2010) (quoting *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 381 (6th Cir. 2009)). However, application of the privilege will be rejected where the "only basis" for the claim is an affidavit containing "conclusory statement[s]." *Guardsmark, Inc. v. Blue Cross & Blue Shield of Tenn.*, 206 F.R.D. 202, 209 (W.D. Tenn. 2002).

Here, the Court finds that Defendants have not met their burden of showing that the interview notes were prepared because of anticipated litigation. Rather, as is reflected in the Supplemental Log, they were created "in tandem with the QIC's purposes of investigation int other Lisa Edwards matter" [Doc. 134-1 p. 1]. Based on the record before the Court, "such purposes

10

were inextricably intertwined in this case and neither purpose dominates the other." *In re OM Secs. Litig.*, 226 F.R.D. 579, 587 (N.D. Ohio 2005); *see In re Pros. Direct Ins. Co.*, 578 F.3d 432, 439 (Aug. 24, 2009) ("The fact that Professionals Direct reasonably anticipated litigation at this point does not answer whether it prepared *the disputed documents* "because of" litigation or not.").

The affidavits Defendants previously submitted reinforce this conclusion. Defendants' counsel reflects that he was retained to "provide legal advice and work with the Quality Improvement ('QIC') and the Risk Management Department to conduct an investigation in aid of quality improvement and in anticipation of litigation" [Doc. 97-3 ¶ 3]. Specifically, for the witness interview notes, the affidavit reflects that the attorney "assisted in the coordination of and attended some of the interviews which were conducted for the dual purpose of quality improvement and legal defense strategy" [*Id.* ¶ 7]. And while the attorney contends that the interview notes were "not created in the ordinary course of hospital business or clinical care, but rather as part of a targeted legal investigation," he also explains that the materials "were prepared in collaboration with the Hospital's QIC and directed by [himself] to assist [him] in [his] legal representation of the Hospital" [*Id.* ¶ 8]. While this evidence shows that the interviews served both quality-improvement and litigation-related purposes, it does not establish that the anticipated litigation was the "driving force" behind the creation of the documents. *In re Pros. Direct Ins. Co.*, 578 F.3d at 439 (quoting *Roxworthy*, 457 F.3d at 595); *see also Young v. Chapman*, No. 3:14-CV-666, 2016 WL 1717226, at *7 (W.D. Ky. Apr. 28, 2016) (attorney's "affidavit is conclusory; it fails to provide the sort of 'specific and detailed' information that would demonstrate that documents were prepared in anticipation of litigation.").

Nor have Defendants demonstrated that the circumstances surrounding the documents' creation warrant finding that they are protected. *See Roxworthy*, 457 F.3d at 595 (explaining that

11

the court must also consider "the circumstances surrounding the documents' creation"). Although Defendants reflect that they retained counsel on February 6, 2023 [Doc. 134 p. 6], "the QIC process was triggered by a 10:30 a.m. phone call from the house supervisor . . . on Sunday February 5, 2023" [Doc. 97-2 ¶ 8]. While Mr. Powers represents that the "[t]hese documents were not created in the ordinary course of hospital business or clinical care, but rather as part of a targeted legal investigation," the affidavit of the Senior Risk Manager, Beth Gaby-Smith, reflects that there were "a collection of statements written by, submitted to [her] or taken by QIC members at [her] direction in collaboration with the Hospital's legal counsel, which were in connection and for the purpose of the QIC investigation" [*Id.*]. The circumstances surrounding these interview notes further indicate that they are not protected, as it appears that the interview notes would have been generated "in the absence of pending or possible future litigation," for the purposes of the QIC investigation. *In re OM Secs. Litig.*, 226 F.R.D. at 587 (citing *Maine v. United States*, 298 F.3d 60, 70 (1st Cir. 2002)). Defendants have not met their burden of demonstrating that these interview notes are protected work-product.

## IV. CONCLUSION

For the reasons stated above, Defendants are **ORDERED** to produce the withheld interview notes to Plaintiff on or before **August 12, 2026.**

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge

12